IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| KINAN F.,* § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | 2:19-CV-88-Z-BR |
| § | |
| ANDREW M. SAUL, Commissioner, § | |
| Social Security Administration, § | |
| § | |
| Defendant. § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION TO AFFIRM THE DECISION OF THE COMMISSIONER

Pursuant to 42 U.S.C. § 405(g), Plaintiff seeks judicial review of the decision of the Commissioner of Social Security, who denied his application for supplemental security income ("SSI") under Title XVI of the Social Security Act for lack of disability.[1] After considering the pleadings, briefs, and administrative record, the undersigned recommends that the Commissioner's decision be AFFIRMED.

---

\* It is this Court's practice to identify the plaintiff using only the first name and last initial in determinative opinions in social security disability cases. This ensures that the public maintains access to the opinions (in compliance with Rule 5.2(c)(2)(B) of the Federal Rules of Civil Procedure and the E-Government Act of 2002) while still protecting the privacy of non-government parties' identities within the opinion.

[1] Plaintiff originally also filed a claim for a period of disability and disability insurance benefits under Title II. (*See* ECF 15-1 at 173–79). With respect to a claim for disability insurance benefits, a plaintiff must show he became disabled on or before the date his insured status expires. *Owens v. Heckler*, 770 F.2d 1276, 1280 (5th Cir. 1985). Here, Plaintiff's insured status expired December 31, 2011. (*See* ECF 15-1 at 13, 197, 218, 227). At the hearing before the Administrative Law Judge ("ALJ"), Plaintiff amended his alleged onset of disability date from June 6, 2007 to January 6, 2016. (*See id.* at 13, 32, 173). Plaintiff's attorney stated he had "discussed that that would also mean dismissing the Title II application," and, "only…pursuing the SSI" with Plaintiff. (*Id.* at 32). Based on the amended alleged onset of disability date, the ALJ dismissed Plaintiff's Title II application as withdrawn. (*See id.* at 14). Because Plaintiff's amended alleged onset of disability date falls more than four years after his insured status expired, the undersigned will not consider Plaintiff's Title II application. *See King v. Colvin*, No. 4:12-CV-632-A, 2013 WL 6153294, at n.1 (N.D. Tex. Nov. 22, 2013).

The undersigned notes that the expiration of Plaintiff's insured status does not affect his claim for SSI, but SSI cannot be paid for the time preceding an application for benefits even if disability began earlier. *See White v. Astrue*, No. 4:08-CV-415-Y, 2009 WL 763064, at *1 (N.D. Tex. Mar. 23, 2009) (citing 20 C.F.R. § 416.335).

## I.  PROCEDURAL BACKGROUND

Plaintiff applied for SSI on February 2, 2016, alleging disabling impairments since June 6, 2007. (*See* ECF 15-1 at 180–86). Plaintiff's application was initially denied and was denied again upon reconsideration. (*See id*. at 101–05, 115–18). Plaintiff requested a hearing, and a hearing was held on November 14, 2017. (*See id*. at 28–55). At the hearing, Plaintiff amended his alleged onset date to January 6, 2016. (*Id*. at 32). The ALJ issued a decision on July 10, 2018, finding Plaintiff not disabled. (*See id*. at 10–27).

Specifically, at step one, the ALJ found plaintiff had not engaged in substantial gainful activity since his amended alleged onset of disability date of January 6, 2016. (*Id*. at 14). At step two, the ALJ found Plaintiff suffers from the severe impairments of seizure disorder, hypertension, abdominal pain due to splenic laceration and hematoma, and degenerative changes in the cervical spine. (*Id*.). At step three, the ALJ found those severe impairments did not meet and were not the equivalent of any impairments listed in appendix 1 of the social security regulations. (*Id*.). Still at step three, the ALJ found Plaintiff retained the residual functional capacity ("RFC") to perform light work; however, he cannot climb ladders, ropes, or scaffolding; cannot work around hazards such as unprotected heights or dangerous moving machinery; and cannot operate motor vehicles. (*Id*. at 22). At step four, the ALJ determined Plaintiff could not return to any past relevant work, but there were jobs he could perform. (*Id*. at 22–24). Accordingly, at step five, the ALJ found Plaintiff was not disabled between the alleged onset date and the date the decision was issued. (*Id*. at 24).

The Appeals Council denied Plaintiff's request for review on February 26, 2019. (*Id*. at 4–7). Therefore, the ALJ's decision is the Commissioner's final decision and properly before the Court for review. *Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005).

## II. FACTUAL BACKGROUND

Plaintiff was 46 years old on the alleged onset of disability date, January 6, 2016. (*See* ECF 15-1 at 32). He completed the twelfth grade and attended Wyoming Tech automotive school, but did not complete the program. (*See id*. at 33). He previously worked as a truck driver. (*See id*. at 49, 206–07). Plaintiff believes his physical impairment, as described above, renders him disabled under the Social Security Act.

## III. STANDARD OF REVIEW

To evaluate a disability claim, the Commissioner follows a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity. *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

A person is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 1382(c)(a)(3)(A), 423(d)(1)(A) (2012). "'Substantial gainful activity' is work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002); 20 C.F.R. § 404.1572(a)–(b). "The claimant bears the burden of showing [he or] she is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler*, 501 F.3d at 448. Before proceeding to steps four and five, the Commissioner must assess a plaintiff's RFC. *Perez v. Barnhart*, 415 F.3d

457, 461 (5th Cir. 2005). RFC is defined as "the most [a plaintiff] can still do despite [the plaintiff's] limitations." 20 C.F.R. § 416.945(a)(1).

In reviewing disability determinations by the Commissioner, the court's role is limited to determining (1) whether substantial evidence exists in the record, considered as a whole, to support the Commissioner's factual findings and ultimate decision, and (2) whether the Commissioner applied the correct legal standards or if any errors of law were made. *Kinash v. Callahan*, 129 F.3d 736, 738 (5th Cir. 1997). To determine whether substantial evidence of disability exists, the court must consider four elements of proof: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (citing *DePaepe v. Richardson*, 464 F.2d 92, 94 (5th Cir. 1972)).

If the Commissioner's findings are supported by substantial evidence, then they are conclusive and the reviewing court may not substitute its own judgment for that of the Commissioner, even if the court determines the evidence preponderates toward a different finding. *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980). Conflicts in the evidence are to be resolved by the Commissioner, not the courts. *Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir. 1977). Substantial evidence is "such relevant evidence as a responsible mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). Only a "conspicuous absence of credible choices," or, "no contrary medical evidence," will produce a finding of no substantial evidence. *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). Stated differently, the level of review is not *de novo*. If the court finds substantial evidence to support the Commissioner's decision, the court must uphold the decision. *See Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990).

## IV. DISCUSSION

Plaintiff claims the ALJ's disability determination is not supported by substantial evidence for two reasons. First, Plaintiff claims the ALJ improperly discredited Plaintiff's explanation for infrequent treatment of his seizure disorder. Second, Plaintiff claims the ALJ relied on Dr. Deborah Moore's ("Dr. Moore") opinion to establish Plaintiff's ability to perform light exertional work—despite the fact that Dr. Moore's opinion is not consistent with such an RFC.

### A. ALJ's discrediting of Plaintiff's explanation for infrequent treatment of his seizure disorder

Plaintiff claims that the ALJ's discrediting of his explanation for infrequent treatment is not supported by substantial evidence. (*See* ECF 20 at 9–12). Plaintiff argues that he is disabled under the applicable law because his seizure disorder is disabling without treatment, and he cannot afford the medication for treatment. (*See id.*) (relying on *Lovelace v. Bowen*, 813 F.2d 55 (5th Cir. 1987)).

"A medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling." *Lovelace*, 813 F.2d at 59. "If, however, the claimant cannot afford the prescribed treatment or medicine, and can find no way to obtain it, 'the condition that is disabling in fact continues to be disabling in law.'" *Id.* (quoting *Taylor v. Bowen*, 782 F.2d 1294, 1298 (5th Cir. 1986)). An ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide ... For example ... [t]he individual may be unable to afford treatment and may not have access to free or low-cost medical services." SSR 96-7p, 1996 WL 374186, at *7–8. However, inability to afford treatment *by itself* is insufficient. *See Lovelace*, 813 F.2d at 59 (emphasis added); *see also Edmond v. Berryhill*, No. 3:18-CV-0677-BH, 2019 WL 1424612, at *10 (N.D. Tex. Mar. 29, 2019). A plaintiff must also

show that he could not obtain medical treatment from other sources, such as free or low-cost health clinics. *See Lovelace*, 813 F.2d at 59 (a condition is disabling in law if a "claimant cannot afford prescribed treatment or medicine, *and* can find no way to obtain it") (emphasis added); *see also* SSR 96-7p, 1996 WL 374186, at *8 (statements may be credible if a claimant cannot afford treatment and does not have access to free or low-cost medical services).

In support of his argument, Plaintiff cites his hearing testimony and notations by different medical providers that he could not afford medication or treatment for his seizure disorder. (*See* ECF 20 at 10). Even assuming the ALJ's finding regarding Plaintiff's inability to afford treatment is not supported by substantial evidence, Plaintiff's argument fails. In addition to an inability to afford treatment, a plaintiff must also show that he could not obtain medical treatment from other sources, such as free or low-cost medical services. *See Lovelace*, 813 F.2d at 59; *see also Edmond*, No. 3:18-CV-0677-BH, 2019 WL 1424612, at *10. In his briefing, Plaintiff makes conclusory statements that he cannot "afford or obtain" treatment (s*ee* ECF 20 at 11–12), but does not explain why he could not obtain medical treatment from other sources, such as free or low-cost medical services, much less provide any such evidence.[2] As a result, remand is not required on this issue.

### B. ALJ's reliance on Dr. Moore's opinion to establish Plaintiff's ability to perform light exertional work

Plaintiff argues that the ALJ improperly relied on his own opinion to determine the effects of Plaintiff's impairments on his ability to work in violation of *Ripley v. Chater*, 67 F.3d 552 (5th

---

[2] The Court also notes Social Security Administration ("SSA") Regulation 82-59, which provides guidance on a plaintiff's purported inability to afford treatment. *See* SSR 82-59, 1982 WL 31384. SSA Regulation 82-59 states a plaintiff's inability "to afford prescribed treatment which he or she is willing to accept, but for which free community resources are unavailable," is a "[j]ustifiable cause" for not following prescribed treatment. *Id*. at *3–4. This regulation, however, requires the plaintiff to explore "[a]ll possible resources," such as "clinics, charitable and public assistance agencies, etc." *Id*. at *4. Further, "[c]ontacts with such resources and the claimant's financial circumstances must be documented." *Id*. Plaintiff's briefing does not address whether he explored all possible resources, nor does his briefing mention any contact with such resources.

6

Cir. 1995).³ (*See* ECF 20 at 12–14). The ALJ found Plaintiff could perform light work, which involves lifting up to 20 pounds at a time. *See* 20 C.F.R. § 404.1567(b). However, Dr. Moore, a consultative examiner, found that Plaintiff could not lift or carry more than ten pounds due to the unexpected nature of his seizures. (ECF 15-1 at 248). Additionally, two state agency medical consultants ("SAMC") offered opinions regarding what Plaintiff could lift and carry. The first SAMC, Dr. Kim Rowlands ("Dr. Rowlands"), found Plaintiff could occasionally lift and carry up to 50 pounds, and could frequently lift and carry up to 25 pounds. (*Id*. at 60). The second SAMC, Dr. Randal Reid ("Dr. Reid"), found Plaintiff had no exertional limitations. (*Id*. at 81). Nevertheless, the ALJ found Plaintiff could lift up to 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. (*See id*. at 20–22). Plaintiff argues the ALJ's RFC finding shows the ALJ (1) effectively rejected the three medical opinions offered regarding what Plaintiff can lift and carry, and (2) improperly relied on his own opinion to find Plaintiff could lift up to 20 pounds at a time. (*See* ECF 20 at 12–14).

In *Ripley*, the plaintiff claimed the ALJ failed to develop the record fully and fairly by finding the plaintiff could perform sedentary work even though there was no medical testimony to support that conclusion. *Ripley*, 67 F.3d at 557. The Fifth Circuit Court of Appeals noted that although an ALJ should usually "request a medical source statement describing the types of work that the applicant was still capable of performing," the absence of such a statement did not necessarily make the record incomplete. *Id*. at 557–58. Rather, when such a statement is absent, the court must consider whether substantial evidence exists in the record to support the ALJ's decision. *Id*. at 557. The record contained "a vast amount of medical evidence" establishing that

---

³ Plaintiff also cites a handful of other opinions, including opinions from this District, in support of his argument that the ALJ improperly relied on his own opinion to determine Plaintiff's RFC. (*See* ECF 20 at 13–14).

plaintiff had a back problem, but "[t]he only evidence regarding [plaintiff's] ability to work came from [plaintiff's] own testimony." *Id*. The ALJ's RFC determination was therefore not supported by substantial evidence, and the court remanded the case with instructions to the ALJ to obtain a report from a treating physician. *Id*. at 557–58.

The facts of this case are distinguishable from *Ripley*. In this case, the ALJ had and considered opinions from three medical sources—Dr. Rowland, Dr. Reid, and Dr. Moore—regarding the effects of Plaintiff's impairments on his ability to lift and carry. (*See* ECF 15-1 at 21–22); *cf. Ripley*, 67 F.3d at 557–58. Upon review, the undersigned agrees the ALJ's finding regarding what Plaintiff could lift and carry does not precisely align with one specific medical source's opinion on the same. The ALJ's RFC finding incorporates more lifting and carrying restrictions than Dr. Rowland and Dr. Reid believed were necessary, but less lifting and carrying restrictions than Dr. Moore believed were necessary. However, the undersigned does not agree the ALJ "rejected" the available medical opinions regarding what Plaintiff could lift and carry, and then independently decided the effects of Plaintiff's impairments on his ability to lift and carry, as this District has said violates *Ripley*. *See Thornhill v. Colvin*, No. 3:14-CV-335-M, 2015 WL 232844, at *10 (N.D. Tex. Jan. 16, 2015) (Lynn, J.).

The ALJ considered, relied on, and did not drastically deviate from Dr. Rowland and Dr. Moore's opinions regarding what Plaintiff could lift and carry. Further, where he deviated from their opinions regarding what Plaintiff could lift and carry, he explained his reasoning. Dr. Moore found Plaintiff could lift and carry no more than ten pounds due to the unexpected nature of his seizures (ECF 15-1 at 248), but the ALJ found Plaintiff could occasionally lift up to 20 pounds (*see id*. at 20–22). The ALJ explained the record supports occasional lifting of an additional ten pounds, particularly in light of the infrequency of Plaintiff's seizures, the lack of objective medical

evidence documenting seizures, and Plaintiff's ability to perform a wide range of daily activities. (*See id*. at 21–22). Dr. Rowland found Plaintiff could occasionally lift and carry up to 50 pounds and could frequently lift and carry up to 25 pounds (*see id*. at 60), but the ALJ found the record supported reducing these limitations by 30 and 15 pounds respectively (*see id*. at 20, 22). The ALJ explained the "medical evidence…as to the cervical spine and abdominal pain secondary to the spleen laceration and hematoma" warranted additional exertional limitations. (*Id*. at 22). The ALJ did not rely on his own opinion in violation of *Ripley* by considering the lifting and carrying limitations endorsed by Dr. Rowland and Dr. Moore and finding the record supported limitations slightly different than the doctors recommended. *See Williams v. Berryhill*, No. 3:18-CV-1913-BH, 2019 WL 4393635, at *13–14 (N.D. Tex. Sept. 13, 2019) (ALJ did not violate *Ripley* were he considered the SAMCs' opinions, but included additional limitations beyond what they proposed); *see also Wycoff v. Berryhill*, No. 4:18-CV-885, 2019 WL 699995, at *4–5 (S.D. Tex. Feb. 19, 2019) (ALJ did not violate *Ripley* by partially discounting the medical opinions he relied on in determining the effect of plaintiff's impairments on her ability to work); *e.g.*, *Kozlowski v. Colvin*, No. 4:13-CV-020-A, 2014 WL 948653, at *4–6 (N.D. Tex. Mar. 11, 2014) (ALJ did not violate *Ripley* by relying on RFC assessment that did not address plaintiff's carpal tunnel syndrome and concluding no limitation for carpal tunnel syndrome was necessary because record did not support such a limitation).

## RECOMMENDATION

It is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the Commissioner's decision be AFFIRMED.

## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of these Findings, Conclusions, and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED June 19, 2020.

*[signature]*
LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

## \* NOTICE OF RIGHT TO OBJECT \*

Any party may object to these proposed findings, conclusions, and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). *Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed* as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions, and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).